UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSE MANUEL OQUENDO,

        Petitioner,

v.                                        Case No. 3:03-cv-743-J-20TEM

JAMES CROSBY, etc.; et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner, an inmate of the Florida penal system who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on September 2, 2003. He challenges his September 17, 1998, and September 24, 1998, state court (Duval County) convictions for armed robbery on the following grounds: (1) the trial court erred in allowing, over objection, a conviction for a crime not charged; (2) the trial court erred in instructing the jury as to a crime which was not a lesser included offense; (3) Petitioner received ineffective assistance of counsel when counsel failed to move to suppress evidence; and, (4) Petitioner received ineffective assistance of counsel when counsel misadvised Petitioner regarding the amount of time he would be required to serve.

On February 3, 2004, Respondents filed an Answer in Response to Order to Show Cause (Doc. #15) (hereinafter Response). Petitioner's Reply to Respondents' Response to Order to Show Cause (Doc. #18) was filed on March 25, 2004.   Thus, this case is ripe for review.

## II. Procedural History

On August 13, 1998, Petitioner was charged in a five-count amended information with three counts of armed robbery.  Count one charged a robbery occurring on February 23, 1998.   Counts two and three alleged charges against Petitioner's co-defendants.  Count four charged a robbery occurring on February 22, 1998, and count five charged a robbery occurring on February 21, 1998.   Ex.[1] A at 26-27.   Petitioner proceeded to trial on count one only, and was found guilty of robbery with a deadly weapon.   Id. at 48.   On September 17, 1998, the trial court adjudicated Petitioner guilty of count one and sentenced him as a habitual violent felony offender to a term of thirty-five years of imprisonment, with a fifteen-year minimum mandatory term.   Id. at 57-66.

On September 24, 1998, Petitioner entered into a plea agreement, wherein he agreed to plead guilty to the armed robbery charge in count four and receive a thirty year sentence, which would run concurrently with the sentence in count one.   Ex. I at

---

[1] The Court hereinafter refers to the exhibits submitted with the Response as "Ex."

2

51-52. In return, the state agreed to enter a nolle prosequi with respect to the armed robbery charge in count five and to refrain from filing several additional charges. Id. On the same day, the trial court adjudicated Petitioner guilty of the armed robbery charge in count four and sentenced him in accordance with the terms of the plea agreement. Ex. C.

Petitioner did not appeal the September 24, 1998, judgment; however, he raised the following two claims regarding the September 17, 1998, judgment:

> ISSUE I
>
> APPELLANT'S CONVICTION FOR ROBBERY WITH A DEADLY WEAPON MUST BE REVERSED SINCE THAT OFFENSE WAS NOT A PROPER LESSER OFFENSE OF THE OFFENSE CHARGED.
>
> ISSUE II
>
> THE TRIAL COURT ERRED IN ALLOWING A NONEXPERT WITNESS TO EXPRESS AN OPINION AS TO THE OPERABILITY OF THE GUN BASED UPON A "PENCIL TEST[.]"

Ex. D at i.

On November 16, 1999, the First District Court of Appeal per curiam affirmed the judgment of conviction, without issuing a written opinion. Ex. G. The mandate issued on December 2, 1999. Ex. H.

On October 18, 1999, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he attacked his September 24, 1998, judgment (count four). Ex. I at

1-17.   On January 31, 2000, he filed another motion for post-conviction relief attacking his September 17, 1998, judgment (count one).  Id. at 18-41.  The trial court held an evidentiary hearing on the claims raised in both motions.  Id. at 56-179.  On December 13, 2000, the trial court entered a single order denying both motions.  Id. at 42-49.

Petitioner appealed, and on September 9, 2002, the First District Court of Appeal affirmed the trial court's order, without issuing a written opinion.  Ex. M.  Petitioner filed a motion for rehearing, which was denied on October 18, 2002.  Ex. N; Ex. O. The mandate issued on November 6, 2002.  Ex. P.

On or about November 10, 2002, Petitioner filed petition for writ of habeas corpus in the First District Court of Appeal, attacking his September 17, 1998, judgment (count one).  Ex. Q.  On December 30, 2002, the court dismissed the petition for lack of jurisdiction.  Ex. R.

On May 20, 2002, Petitioner filed petition for writ of habeas corpus in the trial court, attacking both of his September, 1998, judgments.  Ex. S at 1-19.  The trial court denied the petition on January 8, 2003.   Id. at 20-21.  Petitioner filed a notice of appeal on January 23, 2003.  Id. at 49.  However, on August 28, 2003, the appellate court dismissed the appeal after Petitioner filed a notice of voluntary dismissal.  Ex. T; Ex. U.

4

## III. Timeliness and Form of the Petition

Respondents assert that the Petition should be dismissed because it challenges two separate judgments.  In the alternative, they contend that the Court should dismiss the claim concerning Petitioner's September 24, 1998, judgment (ground four) because the one-year limitation period[2] pertaining to that judgment expired before Petitioner initiated this action.[3]  This Court disagrees.

In Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003), the appellant had raised claims concerning an original judgment and a resentencing judgment in a single petition.  The court found that the "[a]ppellant was allowed to challenge both of these judgments in a single habeas petition under Rule 2(d) of the Rules Governing Section 2254 Cases."  Id. at 1246 (footnote omitted).  Former Rule 2(d) of the Rules Governing Section 2254 Cases[4] stated:

> A petition shall be limited to the assertion of a claim for relief against the judgment or judgments of a single state court (sitting in a county or other political subdivision).  If a petitioner desires to attack the validity of the judgments of two or

---

[2] See 28 U.S.C. § 2244(d)(1).

[3] Respondents concede that the claims concerning the September 17, 1998, judgment (grounds one through three) are timely.

[4] The Rules Governing Section 2254 Cases were amended on April 26, 2004, with the amendments becoming effective on December 1, 2004.  Thus, the former rules were in effect when Petitioner initiated this action.  The current Rule 2(e) is similar to the former Rule 2(d).  See Rule 2(e) of the Rules Governing Section 2254 Cases (providing that "[a] petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court.").

> more state courts under which he is in custody
> or may be subject to future custody, as the
> case may be, he shall do so by separate
> petitions.

Thus, this Court concludes that Petitioner has properly raised claims concerning both judgments in the Petition before this Court since both judgments were entered by the same court, both judgments pertained to charges in a single information, and both judgments were assigned the same case number. Accordingly, this Court finds that all of the grounds raised in the Petition were timely filed. See Walker, 341 F.3d at 1245 ("The statute of limitations in § 2244(d)(1) applies to the application as a whole; individual claims within an application cannot be reviewed separately for timeliness.").

## IV.  Evidentiary Hearing

The Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999). The pertinent facts of the case are fully developed in the record before the Court. Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992). No additional evidentiary proceedings are required. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).

## V.  Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Supreme Court has explained:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law.  See Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  To these ends, § 2254(d)(1) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of
> the United States."

Bell v. Cone, 535 U.S. 685, 693-94 (2002).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications: "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 12 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206,

8

> 1216 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, --- U.S.
> ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002)
> (quoting <u>Williams</u>, 529 U.S. at 405, 120 S.Ct.
> at 1519).   A state court's decision that
> applies the correct legal rule would not fit
> within the "contrary to" clause even if the
> federal court might have reached a different
> result relying on the same law. <u>See</u> <u>Williams</u>,
> 529 U.S. at 404-06, 120 S.Ct. at 1519-20
> (O'Connor, J., concurring).
>
>           . . . .
>
> "Under the 'unreasonable application' clause,
> a federal habeas court may grant the writ if
> the state court identifies the correct
> governing legal principle from this Court's
> decisions but unreasonably applies that
> principle to the facts of the prisoner's
> case." <u>Williams</u>, 529 U.S. at 414, 120 S.Ct.
> at 1523 (O'Connor, J., concurring).   In
> deciding this issue, the federal court should
> consider whether the state court's application
> of the law was objectively unreasonable and
> should not apply the subjective "all
> reasonable jurists" standard. <u>Id</u>. at 409-10,
> 120 S.Ct. at 1521-22.   The Supreme Court
> recently adhered to its pronouncements in
> <u>Williams</u>, stating that "we stressed in
> <u>Williams</u> that an unreasonable application is
> different from an incorrect one." <u>Bell v.
> Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
> L.Ed.2d 914 (2002).   The Court further noted
> that "a federal habeas court may not issue a
> writ under the unreasonable application clause
> 'simply because that court concludes in its
> independent judgment that the relevant state-
> court decision applied clearly established
> federal law erroneously or incorrectly.'" <u>Id</u>.
> (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
> at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the

"contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert.</u>
<u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. <u>See</u> <u>id</u>. at § 2254(e)(1).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Secretary for the Dep't of</u> <u>Corrections</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert.</u> <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## VI. The Evidence Presented at Trial

In Petitioner's initial brief on direct appeal, the appellate attorney thoroughly summarized the evidence presented at trial as follows:

> Ghinbe Ayoub, a clerk at the Prime Stop Food Store, testified that on February 23, 1998, an individual, identified as appellant, entered the store around 7:00 p.m. and purchased a Little Debbie. (II-16-18). [5] Around twenty minutes later, he returned to the store armed with a revolver. (II-18-21). He pointed the gun and demanded the money. (II-21). Mr. Ayoub wasn't sure whether the gun was pointed at him. (II-33-34). Ayoub opened the cash register and gave him the money. The robber then demanded that Ayoub "hit the floor." (II-22). Ayoub then heard shooting. (II-23). Ayoub described the car which the robber entered as a black Oldsmobile. (II-23). Ayoub was shown a photospread about two weeks later from which he identified appellant's photograph. (II-25).
>
> George Rubboz, an employee of Prime Stop Food Store, identified appellant as the individual who entered the store with a gun. He said that the robber pointed the gun at him and demanded that he get on the floor. He then went to the cashier and demanded money. (II-40-47). When the robber was demanding more money from the cashier, Mr. Ayoub, Mr. Rubboz pulled out his gun and fired four times at the robber. (II-47-48). Mr. Ayoub also fired his gun. (II-60). Mr. Rubboz identified the robber from a photospread shown him by the detective. (II-54-56).
>
> Detective Kuczkowski responded to St. Vincent's Hospital after being advised that a

---

[5] Appellate counsel cites the trial transcript, which has been provided to this Court as Ex. B.

11

person had been brought there with gunshot wounds. (II-63-64). The man being treated at the hospital was identified as appellant. Detective Kuczkowski prepared a photospread which he showed to Mr. Ayoub. Mr. Ayoub identified the photograph of appellant. (II-85-87). Over objection on grounds that the witness had not been qualified as an expert, the detective was allowed to testify that from his "pencil test"[6] he determined the gun was in working order. (II-88-89).

Police evidence technician Dennis Snyder processed a vehicle parked in the parking area of St. Vincent's. (II-67-68). He identified a gun which he found in the bushes some 22 feet from the car. (II-70, 72-75).

Michelle Royal, accepted as an expert in latent print examinations, testified that no latent prints of value were lifted from the gun. (II-96).

Ex. D at 2-3. Petitioner did not present any evidence in his defense.

## VII.  Findings of Fact and Conclusions of Law

### A.  Grounds One and Two

In ground one, Petitioner contends that the trial court erred in allowing, over objection, a conviction for a crime not charged. In support of this ground, Petitioner alleges the following facts:

The state, by information, charged Petitioner with committing the offense of armed robbery in that he did carry a firearm, to-wit: a hand-gun.

---

[6] The witness placed a pencil in the gun and pulled the trigger, thereby ejecting the pencil from the gun and demonstrating that the firing pin was operable. Ex. B at 89.

12

> The trial court instructed the jury that
> that [sic] carrying a deadly weapon was a
> lesser included offense of the charged
> offense. Mr. Oquendo objected to this faulty
> instruction, to no avail. Subsequently, the
> jury, having been misled by faulty
> instructions, convicted Petitioner of the
> crime of robbery with a deadly weapon; a crime
> not lesser in severity in punishment, one that
> has mutually exclusive elements, and not
> alleged in the charging instrument.

Memorandum of Law in Support of Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. #7) (hereinafter Petitioner's Memorandum) at 9. He asserts that he was charged with robbery with a firearm, not robbery with some other deadly weapon. Thus, he contends that he was denied due process of law since he was not provided with notice and could not adequately prepare for trial on this uncharged offense. Id. at 10.

In ground two, Petitioner claims that the trial court erred in instructing the jury as to a crime which was not a lesser included offense to the crime charged. He asserts that robbery with a firearm and robbery with a deadly weapon "are both felonies of the first degree and carry the exact same punishment. As such[,] robbery with a deadly weapon is not a lesser included offense to armed robbery with a firearm." Id. at 14. He contends that this error deprived him of his rights under the Due Process Clause, the Equal Protection Clause and the Double Jeopardy Clause. Id. at 14-16.

Respondents contend, and this Court agrees, that Petitioner's federal constitutional claims under these two grounds have been procedurally defaulted. Petitioner asserts that he raised these grounds on direct appeal; however, from a review of the record, it is clear that he raised the following two issues only: (1) that the trial court erred under state law in instructing the jury on robbery with a deadly weapon because it is not a lesser included offense of armed robbery; and, (2) that, pursuant to state law, the Petitioner was entitled to a new trial because he was convicted of robbery with a deadly weapon, even though he was not charged with that offense. Petitioner raised these two claims as errors of state law only. He did not cite any federal cases or federal constitutional provisions in his brief on direct appeal, nor did he allude to any federal claim. Thus, his federal claims in grounds one and two have not been exhausted.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. See Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).

> In order to be exhausted, a federal claim must be fairly presented to the state courts. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). "It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Kelley, 377 F.3d

14

at 1343-44 (citing _Picard_, 404 U.S. at 275-76,
92 S.Ct. at 512 and _Anderson v. Harless_, 459
U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3
(1982)).   Rather, in order to ensure that
state courts have the first opportunity to
hear all claims, federal courts "have required
a state prisoner to present the state courts
with the same claim he urges upon the federal
courts." _Picard_, 404 U.S. at 275, 92 S.Ct. at
512 (citations omitted).   While we do not
require a verbatim restatement of the claims
brought in state court, we do require that a
petitioner presented his claims to the state
court "such that a reasonable reader would
understand each claim's particular legal basis
and specific factual foundation." _Kelley_, 377
F.3d at 1344-45 (citing _Picard_, 404 U.S. at
277, 92 S.Ct. at 513).

_McNair v. Campbell_, 416 F.3d 1291, 1302 (11th Cir. 2005).

Generally, a federal habeas petition should be dismissed if

the petitioner has failed to exhaust state remedies.  _See_ _Keeney v._

_Tamayo-Reyes_, 504 U.S. 1, 10 (1992).   A federal court need not

dismiss the petition to allow for exhaustion of state remedies,

however, if such a dismissal would be futile.

[I]f the petitioner simply never raised a
claim in state court, and it is obvious that
the unexhausted claim would now be
procedurally barred due to a state-law
procedural default, the federal court may
foreclose the petitioner's filing in state
court;  the exhaustion requirement and
procedural default principles combine to
mandate dismissal.

_Bailey v. Nagle_, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam)

(citing _Snowden v. Singletary_, 135 F.3d 732, 737 (11th Cir.), _cert._

_denied_, 525 U.S. 963 (1998)).

15

It would be futile for this Court to dismiss these unexhausted federal claims because they should have been raised on direct appeal.   Thus, Petitioner's federal claims under grounds one and two have been procedurally defaulted.   See Bailey, 172 F.3d at 1305.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice."   Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004).   "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar."   Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003).   The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence."   Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Here, Petitioner has not shown both cause and prejudice. Furthermore, he has not demonstrated that he meets the fundamental miscarriage of justice exception. Thus, the Court will not address his federal claims under grounds one and two.

The exhausted claims under grounds one and two present issues of state law that are not cognizable on federal habeas review. <u>See</u> Response at 20-21. Furthermore, even assuming arguendo that Petitioner's federal claims had been properly exhausted, they are without merit[7] for the reasons stated by the Respondents in their Response. <u>See</u> <u>id</u>. at 21-29.

## B. Grounds Three and Four

In grounds three and four, Petitioner asserts that he received ineffective assistance of counsel during the pretrial proceedings in connection with count one and with respect to his decision to plead guilty to count four. Respondents contend that these two claims are procedurally barred. This Court agrees.

Although Petitioner raised portions of these claims in his Rule 3.850 motions, he did not include any of these claims in his appeal of the order denying the motions. Thus, Petitioner did not exhaust these claims in state court. <u>See</u> <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979) (finding that exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of

---

[7] This Court cannot defer to the adjudication of these claims by the First District Court of Appeal since no federal claims were before that court.

17

its denial); Farrell v. Lane, 939 F.2d 409, 410 (7th Cir.)(finding that claims presented in a post-conviction motion but not appealed were procedurally barred in subsequent habeas proceedings), cert. denied, 502 U.S. 944 (1991); Smith v. Jones, 923 F.2d 588, 589 (8th Cir. 1991) (finding that the claims presented in a post-conviction motion that were not included in the appeal of the order denying that motion were procedurally barred).

It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his ineffective assistance of counsel claims under grounds three and four because they could have and should have been included in his appeal of the order denying his Rule 3.850 motions. Thus, his ineffective assistance of counsel claims under these grounds have been procedurally defaulted. Petitioner has not shown both cause and prejudice nor has he demonstrated that he meets the requirements of the fundamental miscarriage of justice exception. Therefore, the Court need not address his ineffective assistance of counsel claims under these two grounds. However, even if this Court assumes that Petitioner's appeal of the order denying the Rule 3.850 motions was sufficient to exhaust the claims raised in those motions, he is not entitled to relief for the following reasons.

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of

reasonableness and thereby prejudices the defense." <u>Yarborough v.</u> <u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  In <u>Van Poyck</u>, 290 F.3d at 1322-23 (footnotes omitted), the Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000) (en banc) <u>cert</u>. <u>denied</u>, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law:  "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.  <u>Id</u>. at 1314 (internal marks omitted). . . .  Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance."  <u>See</u> <u>Strickland</u>, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." <u>See</u> <u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. at 695 (internal citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

In order to succeed on an ineffective assistance of trial counsel claim concerning a guilty plea, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; and, (2) a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985) (extending the test adopted in Strickland to cases involving guilty pleas).

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because

voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); see Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985) (holding that, in the plea context, a habeas petitioner establishes ineffective assistance of counsel by demonstrating that counsel's advice and performance fell below an objective standard of reasonableness, based upon which he pled guilty). For a guilty plea to "represent an informed choice" so that it is constitutionally "knowing and voluntary," the "[c]ounsel must be familiar with the facts and the law in order to advise the defendant of the options available." Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the Strickland analysis . . . as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment." Hill, 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring) (quoting Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)).

Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court guilty plea only for compliance with constitutional protections.

> This court has concluded that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process:  If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed. 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied, 510 U.S. 967 (1993).

Thus, in order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily.  Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id.; United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986) (per curiam).

> Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise" in the

22

prosecution's plea agreement, a guilty plea violates the Due Process Clause. <u>Mabry v. Johnson</u>, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant. <u>Santobello v. New York</u>, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and <u>consequences</u> of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the <u>legal</u> <u>options</u> <u>and</u> <u>alternative</u> <u>that</u> <u>are</u> <u>available</u>.'" <u>Stano</u>, 921 F.2d at 1142 (citation omitted) (emphasis added). Voluntariness implicates "[i]gnorance, incomprehension," and "inducements" as well as "coercion, terror" and "threats." <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>Stano</u>, 921 F.2d at 1141. Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." <u>Stano</u>, 921 F.2d at 1141 (citing <u>Boykin</u>, 395 U.S. at 243-44, 89 S.Ct. at 1712).

<u>Finch</u>, 67 F.3d at 914-15.

In ground three, Petitioner contends that he received ineffective assistance of counsel when counsel failed to move to suppress evidence. Specifically, he asserts that counsel should have sought to suppress the gun that was found in the bushes near St. Vincent's Hospital, currency that was found in a vehicle parked in the hospital's parking lot, and blood spatter evidence from the scene of the crime. Petitioner's Memorandum at 18-19.

23

Respondents contend, and this Court agrees, that portions of this claim were never raised in state court. Petitioner asserts that he raised this claim as ground two in his Rule 3.850 motion; however, in that motion, he argued only that counsel was ineffective for failing to seek to suppress the gun. He did not claim that counsel should have moved to suppress the currency and blood spatter evidence. See Ex. I at 25-26. Thus, he did not exhaust this claim insofar as he contends that counsel was ineffective for failing to seek suppression of the currency and blood spatter evidence.

It would be futile to dismiss this case to give the Petitioner an opportunity to exhaust the additional factual allegations in support of this claim because he could have and should have raised all of these additional facts in support of the claim in his 3.850 motion. If Petitioner attempted to present these additional facts in another 3.850 motion at this time, such a motion would be subject to dismissal as successive, see Fla. R. Crim. P. 3.850(f), and untimely. See Fla. R. Crim. P. 3.850(b). Thus, Petitioner has procedurally defaulted this claim insofar as he contends that counsel was ineffective for failing to seek suppression of the currency and blood spatter evidence.

Petitioner has not show both cause[8] and prejudice. Furthermore, he has not demonstrated that he meets the fundamental miscarriage of justice exception. Thus, the Court will not address the claim that counsel was ineffective for failing to seek suppression of the currency and blood spatter evidence.

As noted above, a portion of Petitioner's claim in ground three was raised as ground two in Petitioner's Rule 3.850 motion, and after identifying Strickland as the controlling legal authority, the trial court adjudicated the claim as follows:

> In Ground Two, the defendant switches to his conviction as to Count One, and alleges that counsel was ineffective for failing to object to the State's introduction of the gun found in the bushes near his vehicle at St. Vincent's Hospital. First, the defendant did not present any evidence in support of this claim. Second, his Motion fails to even state a lawful basis upon which the gun could have been excluded. Third, given that the defendant was **shot twice** by an eyewitness to the robbery in the store, there is absolutely *no* possibility that the jury would have acquitted the defendant had the gun not been entered into evidence. Accordingly, this Court finds that defendant has failed to meet his burden of proof to show that counsel's performance was deficient, or that the allegedly deficient performance prejudiced the outcome of his trial on Count One.

Ex. I at 47.

---

[8] Insofar as Petitioner asserts that the ineffectiveness of his post-conviction counsel constitutes cause for his default, it is clear that "a petitioner may not rely on his collateral counsel's ineffectiveness to excuse the procedural default of a claim even when the state collateral proceeding was the petitioner's first opportunity to raise the claim." Hill v. Jones, 81 F.3d at 1025.

This claim was rejected on the merits by the trial court and the trial court's decision was affirmed by the state appellate court. Thus, there are qualifying state court decisions. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

In ground four, Petitioner asserts that he received ineffective assistance of counsel when counsel misadvised Petitioner regarding the amount of time he would be required to serve after pleading guilty to count four. In support of this claim, Petitioner contends that he was raised in Puerto Rico and did not understand English at the time he entered into the plea agreement. He alleges that his defense attorney (Ms. Clayton), through the interpreter (Ms. Regalado), told Petitioner that he

26

would be required to serve only fifteen years of the thirty-year sentence. Therefore, he would be released when he was forty-seven years old. Petitioner's Memorandum at 24-25.

> Ms. Clayton commendably associated herself with not only a Spanish-speaking interpreter to aid in the Petitioner's defense, but one of Puerto Rican desent [sic]. However, Ms. Regalado, not a practitioner of law herself, must have misunderstood the applicable sentencing law and/or erred in her relation of the facts as enunciated by counsel when she advised Petitioner that he would be out of prison at age 47 after completing the 15 year mandatory portion of his sentence.

Id. at 26.

Respondents contend, and this Court agrees, that portions of this claim were never raised in state court. Petitioner asserts that he raised this claim as ground one in his Rule 3.850 motion; however, in that motion, he did not claim that the interpreter misadvised him and/or erred in relating the terms of the agreement to him. His sole argument was that his plea was involuntary because counsel misadvised him that he would be required to serve only fifteen years of the thirty-year sentence. See Ex. I at 4. Thus, he did not exhaust this claim insofar as he contends that the interpreter misadvised him and/or erred in relating the terms of the agreement to him.

It would be futile to dismiss this case to give the Petitioner an opportunity to exhaust the additional factual allegations in support of this claim because he could have and should have raised

27

all of these additional facts in support of the claim in his 3.850 motion.  As noted previously, if Petitioner attempted to present these additional facts in another 3.850 motion at this time, such a motion would be subject to dismissal as successive and untimely. Thus, Petitioner has procedurally defaulted this claim insofar as he contends that the interpreter misadvised him and/or erred in relating the terms of the agreement to him.

Petitioner has not show both cause[9] and prejudice. Furthermore, he has not demonstrated that he meets the fundamental miscarriage of justice exception.  Thus, the Court will not address the claim that the interpreter misadvised him and/or erred in relating the terms of the agreement to him.

As noted above, a portion of Petitioner's claim in ground four was raised as ground one in Petitioner's Rule 3.850 motion, and after identifying <u>Strickland</u> as the controlling legal authority, the trial court adjudicated the claim as follows:

> In Ground One, the defendant contends, variously, that counsel failed to explain the consequences of his plea agreement to him, that counsel failed to review the plea agreement form with him, that counsel failed to object to the use of his prior qualifying Puerto Rican conviction to establish his classification as an Habitual Violent Felony Offender (HVFO), and that counsel allegedly told him he would be out in 15 years if he took the plea agreement.  First, this Court

---

[9] Again, Petitioner may not rely on his collateral counsel's ineffectiveness to excuse the procedural defaulted portions of this claim.  <u>Hill</u>, 81 F.3d at 1025.

28

finds that the defendant did not present one shred of evidence in support of any of these claims, and therefore, that these claims are all meritless.  Second, this Court finds from the evidence that was presented through the testimony of the defendant's trial counsel and the Public Defender Investigator (who was from Puerto Rico) that acted as the interpreter on the defendant's behalf prior to his trial on Count One, during his trial on Count One and in the plea agreement proceedings as to Count Four, that these claims are also knowingly false and frivolous[10]. . . .  Accordingly, the evidence did not even prove that counsel's performance was deficient, let alone that the defendant's plea was prejudiced as a result thereof.  <u>Strickland</u>, 466 U.S. at 687.

Ex. I at 44-45.

_____

    [10] At the evidentiary hearing on the Rule 3.850 motion, Ms. Clayton testified that she explained the terms of the plea agreement to Petitioner as follows: Petitioner would be adjudicated guilty of count four and receive thirty years incarceration in the Department of Corrections, with a fifteen year mandatory term; he would receive credit for the time he had already served; the sentence would run concurrently with the sentence imposed in count one; he would be classified as a habitual violent felony offender; he would agree to not appeal the habitual violent felony offender classification; court costs would be imposed and the Petitioner would be required to pay restitution; the state would enter a nolle prosequi for the remaining counts in the amended information; and, the state would agree to not file charges against Petitioner with respect to sixteen other robberies. Ex. I at 71, 78, 82-85, 90, 113, 119.  Ms. Clayton testified that the Petitioner, through the interpreter Ms. Regalado, never indicated that he did not understand the terms of the plea agreement. <u>Id</u>. at 107-08, 122-23. Ms. Clayton agreed that she never coerced or promised the Petitioner "anything in order to get him to agree to the plea agreement[.]" <u>Id</u>. at 122.  Ms. Regalado testified that both she and the Petitioner spoke Spanish "[f]rom Puerto Rico[.]" <u>Id</u>. at 144.  Therefore, there was "no issue as to whether or not [they spoke] the same language[.]" <u>Id</u>.  She testified that whatever Ms. Clayton "told [her,] that's what [she] explained to him." <u>Id</u>.  With respect to her recollection of translating the plea offer, she testified as follows: "I only remember the offer that was made.  And that is what I translated.  I just passed on the information from the attorney to the client." <u>Id</u>. at 146. Ms. Regalado also testified that she explained the plea agreement form to Petitioner "more than once" and that Petitioner appeared to understand the terms of the agreement. <u>Id</u>. at 155-57.

This claim was rejected on the merits by the trial court and the trial court's decision was affirmed by the state appellate court. Upon review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

Therefore, for all of the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of September, 2005.

_____
UNITED STATES DISTRICT JUDGE

ps 9/15
c:
Jose Manuel Oquendo
Ass't Attorney General Thomas D. Winokur

30